# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:06cv449

| | |
|---|---|
| EDDIE BURNS DRAKEFORD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 13][1] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I.    PROCEDURAL HISTORY

The Plaintiff Eddie Burns Drakeford filed an application for disability insurance benefits on June 28, 2002, alleging that he had become disabled as of January 1, 1993. [Transcript ("Tr.") 44-46]. The Plaintiff's application was denied initially and on reconsideration. [Tr. 30-33, 38-40]. A hearing was

---

[1]The Plaintiff, proceeding *pro se*, labeled this pleading as an "opposition" to the Defendant's Answer. [Doc. 13]. Based upon the substance of the Plaintiff's filing, the Court will treat this pleading as a motion for summary judgment.

held before an Administrative Law Judge ("ALJ") on September 21, 2005. [Tr. 583-99]. On November 10, 2005, the ALJ issued a decision denying the Plaintiff benefits. [Tr. 12-18]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [Tr. 5-8]. The Plaintiff has exhausted his available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than

2

creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's

physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past. If the claimant can still perform that work, then a finding of not disabled is mandated. Id. Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work. If so, then the claimant is not disabled. Id. In this case, the ALJ's determination was made at the fourth step.

**IV.    FACTS AS STATED IN THE RECORD**

The Plaintiff was born on November 21, 1953 and was 51 years old at the time of the ALJ's hearing. [Tr. 12, 44]. The Plaintiff received a high school equivalency degree. [Tr. 12, 69]. He served in the United States Marine Corps from 1972 to 1979. [Tr. 44, 83]. His past relevant work

includes work as a day labor worker and a framing carpenter. [Tr. 12, 56, 593].

The Plaintiff was seen at the Miller Orthopaedic Clinic in June 1993. He reported a history of intermittent low back pain for the past fifteen years and that he had been told by his family physician to see a specialist. The Plaintiff reported having back pain with radiation to his left leg to mid-calf. He further reported that he had an old service-connected injury to his left hip and also that he was taking medication for hypertension. An examination revealed that he had full range of motion of his back in all planes with no point tenderness. His heel-toe stand was strong, although he had a limp on the left. His hip range of motion on the left was quite painful, and his motor strength was normal in all groups with no sensory deficits. It was determined that he had a left hip inflammatory process and low back pain. The Plaintiff underwent a course of physical therapy at the Veterans' Administration Medical Center ("VAMC"). By September 1993, the Plaintiff had a successful response to therapy, with improved range of motion. The Plaintiff noted that his symptoms decreased with exercise. The doctor released him and encouraged him to continue home exercises. [Tr. 161-63].

In March 1994, the Plaintiff was seen at the VAMC for low back pain and substance abuse therapy. At that time, the Plaintiff was abusing alcohol and using cocaine. He was transferred to another VAMC for possible admission. The Plaintiff's medical records show that he was not seen again by the VAMC until February 1997 when he prescribed a back brace for degenerative disc disease with low back pain. [Tr. 164-68].

In May 1997, the Plaintiff was admitted to the VAMC for substance abuse treatment with diagnoses of cocaine dependence and alcohol abuse. At that time, the Plaintiff had no acute symptoms except for hypertension and obesity. His mental status was alert and oriented. There was no sign of thought disorder, flight of ideas, or inappropriate affect. The Plaintiff's cognition was intact. The Plaintiff received treatment for depression within the context of substance abuse. The Plaintiff complained of depression and was prescribed Prozac. He was discharged eight days later with no restrictions and encouraged to walk 20 to 30 minutes per day. [Tr. 182-94].

The Plaintiff continued to participate in the VAMC Aftercare outpatient program until August 1998 to address his substance abuse issues. The Plaintiff's records indicate that the Plaintiff did well in individual and group therapy and maintained his sobriety. [Tr. 195-239]. In August 1998, the

Plaintiff reported an episode of low back pain. X-rays were interpreted as normal. [Tr. 234-37]. The Plaintiff was seen again for low back pain in September 1998. At that time, the Plaintiff's blood pressure measured 163/126. He was diagnosed with uncontrolled hypertension and was instructed to continue with his medication. He also was encouraged to lose weight to help with his back pain. [Tr. 245-46].

On January 26, 1999, the Plaintiff's blood pressure had decreased to 156/105. The Plaintiff indicated at that time that he was taking his anti-hypertensive medication. [Tr. 257]. On March 9, 1999, the Plaintiff's blood pressure was 153/98. [Tr. 258].

VAMC records show that the Plaintiff's blood pressure was 156/102 on April 19, 2000 [Tr. 273], and that it was 149/95 on May 22, 2000 [Tr. 276]. On August 24, 2001, the medical examination nearest his DLI, the Plaintiff's blood pressure measured 128/78. At that time, he did not complain of any blood pressure-related problems and stated that he had a blood pressure monitor at home. [Tr. 304].

In January 2002, after his date last insured, the Plaintiff was admitted to the VAMC for depression and suicidal ideation. At that time, the Plaintiff reported marital discord as well as alcohol and drug abuse. He further

7

reported that he had been having crying episodes and experiencing isolation and sadness. On mental status examination, the Plaintiff was oriented and had an adequate attention span, but his mood and affect were somewhat depressed. A physical examination revealed negative straight leg raising and functional range of motion. The impression was of polysubstance abuse, adjustment disorders, back pain by history, hypertension, and obesity. [Tr. 307-23]. At the time of his discharge in February 2002, the Plaintiff's mental status was much improved, with no active features of psychiatric illness, and the Plaintiff was not considered to be a danger to himself or others. [Tr. 366].

In September 2002, William Robie, M.D., a state agency physician, reviewed the Plaintiff's medical records and concluded that he was able to perform medium work. [Tr. 111-18]. Sankar Kumar, M.D., another state agency physician, affirmed Dr. Robie's conclusions. [Tr. 137-44].

The Plaintiff was hospitalized on September 6, 2002 after complaining of depression and suicidal thoughts. The Plaintiff received treatment for alcohol and substance abuse and was discharged on September 25, 2002. [Tr. 370-71].

The Plaintiff was hospitalized again for alcohol abuse and cocaine dependence in October 2002. He again completed a substance abuse

rehabilitation program. At the time of his discharge on November 25, 2002, it was noted that the Plaintiff did not have any clinically acute or significant findings except for a blood pressure level of 176/124 and restricted movement around his lumbosacral spine due to degenerative disc disease. He was able to ambulate freely, however, without much distress or discomfort and was in no acute distress. The Plaintiff successfully completed the program and reported that he felt confident that he would be able to stay free of drugs and alcohol and lead a productive life. [Tr. 369-77].

In March 2003, the Plaintiff returned to the VAMC with complaints of low back pain radiating down his legs. He received a TENS unit. [Tr. 445-47]. A lumbosacral MRI taken in April 2003 showed a small right disc protrusion at L5-S1 abutting the S1 nerve but not displacing it. [Tr. 468]. The Plaintiff was also seen at the psychology clinic and reported periods of crying but noted that the medication overall was working well. [Tr. 469]. In September 2003, nerve conduction studies of his lower extremities showed no evidence of lumbosacral radiculopathy or left extremity peripheral neuropathy. [Tr. 499].

Beginning in October 2003, the Plaintiff was seen by Dr. Carlos Jorge at the Carolina Medical Center Northpark Family Practice for complaints of back and neck pain. The Plaintiff reported a history of a liver biopsy which

9

showed hepatitis C, but stated that he had never been offered treatment for that condition. [Tr. 532]. In August 2005, Dr. Jorge opined that the Plaintiff was unable to maintain gainful employment due to his hypertension, diabetes, hepatitis C, and chronic back pain. [Tr. 530].

## V.  THE ALJ'S DECISION

On November 10, 2005, the ALJ issued a decision denying the Plaintiff's claim. [Tr. 12-18]. Before engaging in the sequential evaluation, the ALJ determined the Plaintiff's date last insured ("DLI"). Upon reviewing the Plaintiff's earnings record, the ALJ concluded that the Plaintiff had earned sufficient quarters of coverage to remain insured for disability insurance benefits through December 31, 2001. [Tr. 12]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff had not engaged in any substantial gainful activity since his alleged onset date. [Tr. 13]. The ALJ then found that the medical evidence did not establish hypertension, diabetes, hepatitis C, alcohol/drug abuse, or depression to be severe impairments prior to the Plaintiff's DLI, but that the medical evidence did establish degenerative disc disease to be a severe impairment. [Tr. 14-15]. The ALJ concluded, however, that this impairment did not meet or equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 15]. The ALJ then assessed the

Plaintiff's residual functional capacity and determined that the Plaintiff was capable of unskilled, medium level work. Because the Plaintiff's past work as a carpenter or day laborer did not exceed the bounds of the Plaintiff's residual functional capacity, the ALJ concluded that the Plaintiff could return to his past work. As an alternative finding, the ALJ employed the Medical-Vocational Grids found at 20 C.F.R. Part 404, Subpart P, Appendix 2, to find that the Plaintiff could make the adjustment to other work existing in the national economy. Accordingly, the ALJ concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date of January 1, 1993 through the date of the Plaintiff's DLI, December 31, 2001. [Tr. 17].

## VI. DISCUSSION

The Plaintiff argues that the ALJ erred in concluding that his hypertension was not a severe impairment. Specifically, the Plaintiff argues that the medical records show that his hypertension was not controlled by medication. He further argues that the ALJ erred in failing to consider the side effects of his blood pressure medications. [Doc. 13 at 2].

There is substantial evidence in the record to support the ALJ's determination that the Plaintiff's hypertension was non-severe. While the

Plaintiff was diagnosed with uncontrolled hypertension in September 1998, VAMC records show that his hypertension was managed with medication. [Tr. Tr. 245-276]. On August 24, 2001, the medical examination nearest his DLI, the Plaintiff's blood pressure measured 128/78. At that time, he did not complain of any blood pressure-related problems and stated that he had a blood pressure monitor at home. [Tr. 304]. These medical records amply support the ALJ's finding that the Plaintiff's hypertension was well-controlled by medication.

While the Plaintiff argues that the ALJ did not consider the side effects of his medications, the medical records fail to show that the Plaintiff complained of any such side affects. In support of his motion for summary judgment, the Plaintiff has submitted a table of his medications and their purported side effects. [Doc. 13-2 at 28-31]. This table, however, is at odds with the contemporaneous treatment notes. For example, the Plaintiff asserts that his blood pressure medication caused dizziness, fatigue, and nausea. [Id.]. The notes from VAMC, however, show that the Plaintiff specifically denied those symptoms. [Tr. 275-76]. For these reasons, the Court concludes that the ALJ did not err in determining that the Plaintiff's hypertension was non-severe.

The Plaintiff further argues that the ALJ erred in failing to find that the Plaintiff's depression was a severe impairment. [Doc. 13 at 2]. As the ALJ correctly noted, however, the treatment for depression that the Plaintiff received prior to his DLI was within the context of substance abuse. The Plaintiff's first complaints of depression, as distinct from substance abuse, was not until after his DLI. [Tr. 320-31]. Reviewing the record as a whole, there is no indication that the Plaintiff's depression was severe before his DLI.

The Plaintiff also argues that his medical records were not fully reviewed. [Doc. 13 at 1]. This argument is without merit. The relevant period under review spans from the alleged onset date of disability, January 1, 1993, to the Plaintiff's DLI, December 31, 2001. Therefore, records of medical treatment received outside this period are simply not relevant to the case at hand, and the ALJ did not err in excluding such records from his consideration.

The Plaintiff seeks to submit to this Court additional medical records that were not presented to the ALJ or the Appeals Council. In reviewing an ALJ's decision for substantial evidence, the Court cannot consider evidence which was not presented to the ALJ. See Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996). Moreover, this new evidence is not sufficient to compel

a remand under sentence six of 42 U.S.C. § 405(g). The Court may order additional evidence to be submitted to the Commissioner upon a showing that the new evidence is material and that there is good cause for the failure to introduce such evidence in the prior proceeding. Id. at 638. The Plaintiff, however, has not explained why this additional evidence was not presented to the ALJ or the Appeals Council. Accordingly, this new evidence does not warrant a remand in this case.

## VII. CONCLUSION

For the foregoing reasons, the Court concludes that the Commissioner applied the correct legal standards and that there is substantial evidence to support the Commissioner's determination that the Plaintiff is not disabled within the meaning of the Social Security Act.[2]

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 13] is **DENIED**; the Defendant's Motion for

---

[2]As noted by the Defendant, although the Plaintiff does not qualify for disability insurance benefits, the Plaintiff is still free to apply for supplemental security income benefits, as there is no requirement that he be insured to receive such benefits. [Doc. 22 at 3].

Summary Judgment [Doc. 14] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**, and judgment shall issue simultaneously herewith.

**IT IS SO ORDERED.**

Signed: April 20, 2009

Martin Reidinger
United States District Judge